UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA BELTRAN, *individually and on behalf of all those similarly situated,*<br><br>        Plaintiffs,<br><br>    vs.<br><br>CAPITOL RECORDS, LLC, f/k/a, CAPITOL RECORDS, INC. AND EMI MUSIC, INC.,<br><br>        Defendants. | Case No.: 12-cv-1002 YGR<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Graciela Beltran ("Plaintiff") brings the instant action in diversity asserting claims for breach of contract, declaratory judgment, open book account, breach of the implied covenant of good faith and fair dealing, and unfair competition in violation of California Business & Professions Code § 17200, against defendant Capitol Records, LLC, f/k/a Capital Records, Inc. and EMI Group Inc. ("Defendants"). Plaintiff's claims arise out of a 1995 license agreement with EMI Latin Records. Plaintiff filed her Second Amended Complaint on July 3, 2012, the Court having previously granted a motion to dismiss with leave to amend.

The parties are before the Court on Defendants' motion to dismiss the Second Amended Class Action Complaint ("SAC") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties briefed the matter, which was originally set for hearing on August 28, 2012, and the Court continued the hearing to October 2, 2012, with a request for supplemental briefing. The Court heard oral argument on October 2, 2012. The parties thereafter submitted additional supplemental briefing as requested by the Court at the hearing.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby Orders that the Motion to Dismiss is **GRANTED** on the

grounds that the loan-out company's incapacity to sue precludes a claim by Beltran, the sole owner of that loan-out company.

## I.     SUMMARY OF ALLEGATIONS

Plaintiff's claims all arise from allegations that Defendants failed to pay proper royalties under her recording agreement.  (SAC at ¶¶ 12-38.)  Plaintiff alleges that under the recording agreement, Defendants were required to pay: (*i*) a certain royalty for physical products sold based upon masters of recordings created by Plaintiff; (*ii*) a higher royalty for master recordings licensed to third parties.  (*Id.* ¶¶ 27-29.)  Plaintiff alleges that Capitol improperly treated the sale of the group's recordings through digital content providers, such as iTunes, as a record sale and paid the lower record sale royalty rate.  (*Id.* ¶¶ 30-32.)  Plaintiffs contend that Capitol should have treated such sales differently for royalty purposes, because Capitol "licenses" masters to digital content providers for permanent download sales.  (*Id.* ¶ 38.)  Plaintiff alleges that, as a result, she and others similarly situated are entitled to a higher royalty rate for "licenses" under their recording agreements, rather than the lower royalty rate that applies when Capitol sells recordings in physical format.

## II.     STANDARDS APPLICABLE TO THE MOTION

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the complaint.  *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995).  All allegations of material fact are taken as true.  *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007).  However, legally conclusory statements not supported by actual factual allegations need not be accepted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  *See id.* at 558-59.

## III.     DISCUSSION

Defendants move to dismiss on several grounds.  As to all claims, Defendants contend that Beltran has no standing, since she is not a party to the recording contract at issue here, and is not a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    proper third-party beneficiary.  Moreover, Defendants argue, because the loan-out company that is

2    the party to the contract is a suspended corporation and has no capacity to sue under California

3    Revenue and Taxation Code section 23301 ("Section 23301"), the public policy underlying Section

4    23301 prohibits Plaintiff from suing on the contract, even if she is a third-party beneficiary.

5           **A.     Third Party Beneficiary Status**

6           Beltran has alleged facts sufficient to establish third party beneficiary status.  "A third party

7    qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the

8    terms of the contract make that intent evident."  *Karo v. San Diego Symphony Orchestra Ass'n*, 762

9    F.2d 819, 821-22 (9th Cir. 1985) (*citing Strauss v. Summerhays*, 157 Cal. App. 3d 806, 816 (1984)).

10   Though a party need not be named in the contract itself to qualify as a third party beneficiary, the

11   contract must reveal a clear intention of the parties to secure the benefit of its provisions to the third

12   party personally.  *Sessions Payroll Management v. Noble Constr. Co.,* 84 Cal. App. 4th 671, 680

13   (2000); *Eastern Aviation Group, Inc. v. Airborne Express, Inc.,* 6 Cal. App. 4th 1448, 1452 (1992).

14   Under California Civil Code section 1559, a "contract made expressly for the benefit of a third

15   person may be enforced by him at any time before the parties thereto rescind it."

16          Here, Plaintiff alleges that she is the real party in interest and the third-party beneficiary of

17   the recording agreement.  The heading of the agreement states that it is the "EMI Latin Recording

18   Agreement w/ 'Graciela Beltran'" (SAC at ¶ 42, Exh. 1 at 1.)  As noted in the Court's prior order,

19   Beltran signed the agreement "ACCEPTED AND AGREED: G.B. TESORO MUSIC [ ] By:

20   Graciela Beltran" and included a "Federal ID #," presumably of the loan-out company.  (SAC at

21   Exh. 1, page 13 of 13.)  These facts indicate that the agreement was between the loan-out company,

22   G.B. Tesoro Music, and EMI Latin.  However, the agreement declares that EMI is engaging

23   "Graciela Beltran under G.B. Tesoro Music, professionally known as, 'Graciela Beltran,' hereafter

24   referred to as 'You,' or 'Artist' for the purpose of making records for us.'" (*Id.*)  Additional

25   references in the agreement to "You," "you" and "Artist" create some ambiguity whether those terms

26   refer to the loan-out company or to Beltran individually.  The nature and context of certain

27   provisions indicates that "Artist" means Beltran individually, rather than the corporation.  (*See, e.g.,*

28   SAC, Exh. 1 ¶ 12(g) ["The Artist has reached the age of majority prior to the date hereof"].)  The

United States District Court
Northern District of California

language of the agreement also suggests that "you" or "You" mean Beltran individually.[1]  Moreover, and in addition to the ambiguity in the agreement itself, royalty payments were not made to G.B. Tesoro Music, but instead were sent to Graciela Beltran and listed Beltran as the payee.  (SAC ¶ 42, Exh. 2.)  These allegations are sufficient to plead a basis for standing to enforce the agreement as a third party beneficiary.

Defendants also argue that the agreement contains an express prohibition on third-party beneficiary claims.  The language in the agreement is:

> Except as otherwise specifically provided herein, [Defendants] shall have no obligation hereunder or otherwise to pay any person, firm, or corporation any amounts in connection with the exercise of our rights hereunder.

(SAC, Exhibit 1 at ¶ 12(j).)  This provision indicates that the parties agreed that no third parties were permitted to seek payment from Defendants *except as otherwise provided.*  As indicated above, the terms of the agreement itself reveal some ambiguity as to whether payments under the agreement were to be made to GB Tesoro Music or to Beltran.  Thus, the agreement could reasonably interpreted to "otherwise provide" for payments by Defendants to Beltran, rather than expressly prohibiting a third-party beneficiary claim by her.  This ambiguity precludes dismissal on this basis at the pleading stage on this basis.  *See Consult Ltd. v. Solide Enters., Inc.,* 802 F.2d 1143, 1149 (9th Cir. 1986) (where the language "leaves doubt as to the parties' intent" the motion to dismiss must be denied); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040-41 (C.D. Cal. 2008) (denying motion to dismiss where language of agreement was susceptible of more than one interpretation).

### B.    California Revenue and Taxation Code Section 23301

Defendants next argue that California public policy, as stated in California Revenue and Tax Code Section 23301, precludes Plaintiff from bringing the claims here.  The promisee under the contract, G.B. Tesoro Music, Inc., is a suspended corporation, with no capacity to sue on the contract

---

[1] For example, the agreement states: "You hereby agree to provide us with your exclusive personal services as a recording vocalist and musician throughout the universe."  (SAC Exh. 1 at ¶ 2; *see also* ¶ 6 ["you agree to perform at sessions"].)  And, while the capitalized "You" is defined in paragraph 1, terms indicating the person to whom payments shall be made are not capitalized.  (*See* SAC Exh 1 ¶¶ 5(a),(b); 8 (a)(1) ["We shall pay you a royalty rate"].)

United States District Court
Northern District of California

1  or otherwise.  Cal. Rev. & Tax Code § 23301; *see also, e.g., Reed v. Norman*, 48 Cal. 2d 338, 343

2  (1957) (a "corporation may not prosecute or defend an action, nor appeal from an adverse judgment

3  in an action while its corporate rights are suspended for failure to pay taxes.").  Thus, Defendants

4  argue that permitting Beltran to sue based upon the contract, despite the suspended status of the

5  contracting party, would allow Beltran to make an end-run around the requirements of Section

6  23301.

7          The Court agrees that, even if Beltran is a third party beneficiary of the recording contract, a

8  person standing in close relation to the suspended corporation, as she does, cannot sue to enforce the

9  agreement because doing so would be contrary Section 23301.  *See Kaufman & Broad Communities,*

10  *Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212, 218 (2006) ("*Kaufman & Broad*"); *see*

11  *also Amesco Exports, Inc. v. Munisoglu*, 977 F. Supp. 1014, 1015 (C.D. Cal. 1997), *order vacated on*

12  *other grounds*, 87 F. Supp. 2d 1013 (C.D. Cal. 1997) (allowing individual to sue on written contract

13  as to which he is not a party as a third party beneficiary would create a mechanism for avoiding

14  obligations of corporate form, including bar on litigation by suspended corporation). The California

15  Court of Appeal in *Kaufman & Broad* noted that the policy underlying Section 23301's suspension

16  of a corporation's powers, including the power to sue or defend a lawsuit, was to induce the

17  corporation to pay its taxes and maintain its good standing.  *Kaufman & Broad,* 136 Cal.App.4th at

18  218.  As the California Supreme Court has held, once the purpose of pressuring the delinquent

19  corporation to pay its taxes has been satisfied, "[t]here is little purpose in imposing additional

20  penalties."  *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, 8 Cal.3d 369, 371 (1972).  Thus, for

21  instance, the suspended status of a corporation under Section 23301 does not result dissolution of the

22  corporation, piercing of the corporate veil to reach shareholders, or automatically voiding agreements

23  as to which the suspended corporation is a party.  *See United States v. Standard Beauty Supply*

24  *Stores, Inc.*, 561 F.2d 774, 776-77 (9th Cir. 1977) (corporate veil not pierced); *Gardiner Solder Co.*

25  *v. Supalloy Corp., Inc.*, 232 Cal. App. 3d 1537, 1543-44 (1991) (corporation that voided agreement

26  with suspended corporation per Section 23301 and 23305a was required to make restitution after

27  revivor of the corporation).  At the same time, the California Legislature clearly meant to foreclose

28  attempts to avoid the consequences of a corporate suspension while it was still in effect.  As the court

United States District Court
Northern District of California

noted in *Kaufman & Broad*, Section 19719 of the Revenue and Taxation Code made it an offense punishable by fine or imprisonment for a person to attempt to exercise the rights and privileges of a corporation suspended under Section 23301.  *Kaufman & Broad,* 136 Cal. App. 4th 218.[2]

Here, Beltran is the sole shareholder and officer of the loan-out corporation.  Were the Court to allow her to proceed on her own behalf without regard to the corporation's suspended status, Beltran would obtain the benefits of the corporate form without its burdens.  She would be using the corporate entity to contract, yet would retain the right to sue as an individual, third party beneficiary even when the corporation could not on account of its failure to comply with its corporate obligations and tax liabilities.

In its prior order granting leave to amend, the Court cited to *Performance Plastering v. Richmond American Homes of California, Inc.,* 153 Cal. App.4th 659 (2007), which held that a third party beneficiary of a settlement agreement could sue to enforce that settlement agreement even when the corporate party to the contract was suspended and unable to sue under Section 23301.  Plaintiff now relies on this case as well.  However, upon further briefing, the Court finds that the situation in *Performance Plastering* is distinguishable from the circumstances here.  *Performance Plastering* involved two sets of settlement agreements, one of which was between a homebuilder (Richmond) and one of its subcontractors, a suspended corporation (Performance Plastering) (the "El Nino Settlement Agreements").  The El Nino Settlement Agreements released "Performance Plastering ***and its insurers*** " from claims related to a construction project.  *Id.* at 662 (emphasis added).  Later, the insurer sought to enforce the agreement, and the homebuilder opposed on the grounds that the corporation was suspended and the contract, therefore, voidable.  The court reasoned that the suspended status of Performance Plastering did not invalidate the settlement agreement, but merely made it voidable, at the election of Richmond, should it choose to bring suit to declare the agreements void and return the money paid by Performance Plastering.  *Id.* at 668-69.  The insurer was an express third party beneficiary of the settlement agreement and, notwithstanding

---

[2]  Only later was Section 19719 amended to preclude such punishment where an insurer acted to defend a suspended corporation in a civil action.  However, the court found that the exemption from penal sanctions did not create any right in an insurance company to sue or defend on behalf of the insured.  *Kaufman & Broad,* 136 Cal.App.4th at 220-21.

6

the voidability of the agreements as between Richmond and Performance Plastering, had its own right to enforce the agreement. *Id.* at 669. Consistent with that court's earlier holding in *Kaufman & Broad,* the insurer was acting to protect its own rights rather than the rights of the suspended corporation itself. *Id.*; *cf. Kaufman & Broad,* 136 Cal. App. 4th at 218.

More importantly, and unlike Plaintiff here, the insurer in *Performance Plastering* was not closely related to the corporation and was not in a position to revive the corporation and pursue its legal rights. Under those circumstances, denying the insurance company the right to proceed as a third party beneficiary on account of Section 23301 would deny it a remedy for breach of an agreement expressly made for its benefit, while doing nothing to effectuate the intent of the Revenue and Taxation Code to compel the corporation to pay taxes.

By contrast, in this case, Beltran is directly responsible for the suspended status of the corporation and holds the sole authority to revive it. Beltran controls G.B. Tesoro Music. She is its chief executive officer, secretary, chief financial officer, agent for service of process, and the only director. (Defendants' Request for Judicial Notice, Exh. 1 [Certified Copy of Statement of Information for G.B. Tesoro Music, filed May 16, 2012].)[3] Beltran executed the recording contract not on behalf of herself individually, but as the agent of her loan-out company. Allowing her to pursue claims for payment on that contract when her loan-out company is barred from doing so would be contrary to the purposes of Section 23301. *See Amesco Exports, Inc.,* 977 F. Supp. at 1016 (finding suit by individual officer and shareholder improper because allowing an "individual to sue on a contract signed only by the corporation would be to allow that person the benefits of a corporation without the limitations"). In short, Beltran cannot be permitted to use the corporate form when it is convenient, but ignore the corporate form when it is not.

## CONCLUSION

Based upon the foregoing, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND**. The Second Amended Complaint is **DISMISSED**.

**IT IS SO ORDERED.**

---

[3] Defendant's unopposed request for judicial notice of this document is **GRANTED**.

United States District Court
Northern District of California

Date: March 12, 2013

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE